UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATOYA BURRAGE obo J.S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18 CV 105 RWS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying Plaintiff's application for supplemental security income. Because the Commissioner's decision is supported by substantial evidence from the record, I will affirm the Commissioner's decision.

### I. Procedural History

Plaintiff's mother protectively filed for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. The application was filed on Plaintiff's behalf on October 30, 2014 and alleges a disability onset date of September 16, 2014. The Commissioner denied Plaintiff's application on March 3, 2015. Tr., ECF No. 13, at 70.

Plaintiff requested a hearing before an Administrative Law Judge, which took place on January 11, 2017. Tr. at 10. On March 28, 2017, the ALJ issued a decision denying benefits. On December 2, 2017, the Appeals Council denied Plaintiff's request for review. Tr. at 1. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. §§ 1383(c)(3).

## II.    Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Plaintiff's recitation of facts set forth in Plaintiff's Statement of Material Facts (ECF Doc. No. 18-1) insofar as they are admitted by the Commissioner (ECF Doc. No. 25-1). I also adopt the additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF Doc. No. 25-1), because Plaintiff does not refute them. Together, these statements provide a fair and accurate description of the relevant record before me. I will discuss additional facts as needed to address the parties' arguments.

## III.    Legal Standards

To be entitled to disability benefits, a claimant under the age of 18 must "have a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Commissioner must undergo a three-step process when evaluating whether a child is entitled to SSI benefits. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. If not, the Commissioner must then determine whether the child's impairment, or combination of impairments, is severe. Finally, if the child's impairment(s) is severe, the Commissioner must determine whether it meets, medically equals, or functionally equals the severity of an impairment listed in Appendix 1 of Subpart P of Part 404 of the Regulations. 20 C.F.R. § 416.924(a); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004). If the impairment(s) meets or medically equals a Listing, the child is disabled. Garrett, 366 F.3d at 647. If a child's impairment does not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairment to determine whether the impairment functionally equals the listings. 20 C.F.R. § 416.926a. If this analysis shows the child not to have an impairment which is functionally equal in severity to a listed impairment, the ALJ must find the child not disabled. Oberts o/b/o Oberts v. Halter, 134 F. Supp. 2d 1074, 1082 (E.D. Mo. 2001).

To functionally equal a listed impairment, the child's condition must result in an "extreme" limitation in one domain of functioning or "marked" limitations in two domains. 20 C.F.R. § 416.926a(a). The domains are "broad areas of

3

functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains used by the Commissioner in making this determination are: 1) Acquiring and Using Information; 2) Attending and Completing Tasks; 3) Interacting and Relating with Others; 4) Moving About and Manipulating Objects; 5) Caring for Oneself; and 6) Health and Physical Well-Being. Id.

A child-claimant has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. His day-to-day functioning may be seriously limited when his impairment(s) limits only one activity or when the interactive and cumulative effects of his impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2)(i). A child has an "extreme" limitation when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3). In determining whether a child-claimant's functioning may be marked or extreme, the Commissioner is to review all the evidence of record and "compare [the child's] functioning to the typical functioning of children [the child's] age who do not have impairments." 20 C.F.R. § 416.926a(f)(1); see also 20 C.F.R. § 416.926a(b) (in determining child-claimant's functioning, Commissioner looks "at how

appropriately, effectively and independently [the child] perform[s] [his] activities compared to the performance of other children [the child's] age who do not have impairments."); 20 C.F.R. § 416.924a(b)(5).

In reviewing the ALJ's denial of Social Security disability benefits, my role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires, 564 F.3d at 942. "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, I must consider evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, I may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome. See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). I must "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (internal citation omitted).

## IV. ALJ's Decision

In the ALJ's written decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 30, 2014. The ALJ also found that Plaintiff has several severe impairments: attention deficit hyperactivity disorder

("ADHD"), oppositional defiant disorder ("ODD"), and disruptive disorder. However, the ALJ determined that those impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 13, 14. The ALJ then determined that Plaintiff's impairments did not functionally equal the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 15-32.

Ultimately, the ALJ found that Plaintiff has not been disabled since the alleged onset date through the date the application was filed. Tr. at 32.

## V. Discussion

In this action for judicial review, Plaintiff contends that the ALJ's decision was not supported by substantial evidence, because the ALJ dismissed most of the evidence in the record. Plaintiff further contends that the ALJ did not articulate a legally consistent position in the decision, because the underlying evidence on which the ALJ's decision relies is inconsistent with the ALJ's conclusions. Plaintiff cites evidence from the record that purportedly supports Plaintiff's arguments that Plaintiff experiences significant functional limitations that are more severe, more intense, and more persistent than the ALJ found.

These arguments do not correctly depict the ALJ's well-reasoned and thorough decision. Plaintiff mentions—but does not engage with—the central thrust of the ALJ's decision: that Plaintiff's medical and educational records, like

6

the testimony from medical and lay witnesses, all point to an improvement in Plaintiff's symptoms as he underwent a medical treatment regimen and received special education services. See, e.g., Tr. at 14, 15, 17-23, 25-28, 30 (citing evidence from the record that Plaintiff's behavior and academic performance improved with medical treatment and special education services).

Plaintiff does not appear to contest the ALJ's finding that Plaintiff's impairments do not meet or equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. Rather, Plaintiff contests the ALJ's determination that Plaintiff's condition did not result in an extreme limitation in one domain of functioning or a marked limitation in two domains. Plaintiff incorrectly states that the record contains consistent evidence of marked levels of impairment in the domains of "attending to and completing tasks" and "interacting and relating with others." Plaintiff also asserts that the ALJ incorrectly applied the Commissioner's stated policies for assessing "consistency," and for assessing the severity of the functional domains (Social Security Ruling 16-3p (SSR 16-3p), 20 C.F.R. §§ 416.924, 416.924(a), 416.926, 416.926(a)).

### a. Domains for Assessing Functional Equivalence to a Listed Impairment

Substantial evidence supports the ALJ's determinations regarding Plaintiff's less than marked limitations in the domains of "attending to and completing tasks" and "interacting and relating with others." The record makes clear that the medical

treatment Plaintiff has received has drastically improved Plaintiff's limitations in these areas. Far from dismissing "most of the substantial evidence contained in the record," Plaintiff's Brief at 17, the ALJ's decision engages with the evidence and weighs it appropriately. The substantial evidence the ALJ cites is consistent with the ALJ's analysis.

### i. Attending and Completing Tasks

The ALJ's decision considers the substantial evidence underpinning the ALJ's determination regarding Plaintiff's limitation in this domain. The decision reviews mixed evidence from function reports submitted by Ms. Burrage. It notes that Plaintiff's teachers reported Plaintiff experienced difficulty in certain areas such as "task focus and task completion" and "initiating problem solving." Tr. at 26 (citing teacher reports from December 2014).

However, the ALJ explained that Plaintiff's cognitive testing results from around the same time as the teacher reports reflected better results than his teachers assessed. Id. Those results further improved over time; Plaintiff's Individualized Education Program from the following year "notes that he was able to improve his task-related skills, and that the staff only has concerns about his task focus and completion on days when he does not have his medication." Id.

Evidence that Plaintiff may have had a more severe limitation before he began medical treatment, or that he experiences more severe symptoms when he

8

does not take his medication as prescribed, do not support a finding that his limitation in attending and completing tasks is more severe than the ALJ determined. The opposite is true: if substantial evidence shows that medication controls his symptoms, there is substantial evidence that his condition is not disabling. See Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (quoting Brown v. Barnhart, 390 F.3d 535, 539 (8th Cir. 2004)).

### ii. Interacting and Relating with Others

Plaintiff's history of his ability to interact and relate with others follows a similar pattern to his history of attending and completing tasks. Third-party evidence submitted to the ALJ shows that Plaintiff has experienced past limitation in this domain. However, the record also shows Plaintiff's performance in this domain improves when he is following his treatment plan.

As the ALJ notes, the record contains evidence that Plaintiff has a history of "some difficulty interacting appropriately with others." Tr. at 27. However, the record also shows that "his behavior has improved since he began taking medication." Id.; see also Tr. at 28 ("In December of 2015, his educators stated that they had concerns about his aggressive behavior only on days when he did not have his medication."). Plaintiff "has demonstrated cooperative behavior at appointments" and is "helpful and kind to his mother." Tr. at 28. There is not

9

consistent evidence supporting Plaintiff's argument that his limitation in this domain is more severe than the ALJ found. Rather, as the ALJ explains, the record supports the conclusions that Plaintiff's symptoms are controlled when Plaintiff is following his medical treatment regimen.

### b. ALJ's Evidentiary Determinations

The ALJ's conclusions of fact and the weight the ALJ accorded to the evidence in the record are supported by substantial evidence. Plaintiff argues that the ALJ's decision fails to articulate a legally sufficient rationale for the weight the ALJ assigned to the third-party evidence and the objective medical evidence, including GAF scores. Plaintiff seems to generally assert the ALJ's decision runs afoul of SSR 16-3p, 20 C.F.R. §§ 416.924, 416.924(a), 416.926, and 416.926(a). I assume Plaintiff also intended to refer to 20 C.F.R. §§ 416.924a and 416.926a as provisions the ALJ did not follow. Regardless, Plaintiff does not identify any part of those provisions that the ALJ failed to follow.

The ALJ's decision clearly explains the rationale on which the ALJ gave little weight to (or in Plaintiff's words, "discards") much of the evidence in the record: it largely comes from before Plaintiff began his medical treatment regimen. The pre-treatment evidence on which Plaintiff's argument relies is inconsistent with the record as a whole. The record shows that Plaintiff has improved as a result of his undergoing medical treatment.

### i. Medical Evidence

The ALJ's opinion thoroughly considers the medical evidence in the record. In accordance with the requirements of SSR 16-3p's two-step process, the ALJ first found that Plaintiff has "multiple severe medically determinable impairments." Tr. at 13. Next over the course of the decision, the ALJ reviewed the record as a whole, including medical evidence, to evaluate "the intensity, persistence, and limiting effects" of Plaintiff's symptoms. SSR 16-3p. The ALJ concluded that while "the medically determinable impartments could reasonably be expected to produce most of the alleged symptoms," "the statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." E.g. Tr. at 18.

The ALJ's decision discusses evidence and opinions submitted by two doctors, Drs. Toll and Raza. As Plaintiff's brief notes, one of those doctors, Dr. Toll, "indicated the plaintiff has a marked level of impairment in interacting and relating to others." Brief at 16. This is consistent with some evidence in the record. However, as Plaintiff's brief also acknowledges, the ALJ "gave little weight to the opinion of Dr. Toll, because there was significant evidence after Dr. Toll had rendered her opinion in February 2015" that was inconsistent with Dr. Toll's assessment. Id. at 7. As the decision explains, the ALJ had good reason to

11

discount Dr. Toll's assessment. See Tr. at 20 (citing evidence in the record that is inconsistent with Dr. Toll's opinion). The ALJ articulated a legally sufficient rationale for assigning little weight to Dr. Toll's opinion.

### ii. Global Assessment of Functioning (GAF) Scores

Plaintiff also states that the decision did not sufficiently explain the ALJ's consideration of the GAF scores in the record. The decision contains extensive explanation about how the ALJ considered GAF scores and why the ALJ gave them little weight. The ALJ's reasoning mirrors the Commissioner's position on GAF scores and the case law. See Tr. at 22; Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746, 50764-65 (noting that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); Nowling v. Colvin, 813 F.3d 1110, 1123 (8th Cir. 2016) ("GAF scores are of little value.").

Plaintiff cites to the GAF scores as evidence that Plaintiff's limitations are more severe than the ALJ opined. Plaintiff does not provide authority for the proposition that the ALJ should have given the GAF scores more weight. Even assuming as true that GAF scores normally have stronger bearing on an ALJ's disability determination, I may not reverse "merely because substantial evidence would support a contrary outcome." See Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011).

### iii. Non-Medical Evidence

The ALJ's decision considers evidence from a variety of non-medical sources that the ALJ found to be inconsistent with the record as a whole. The ALJ considered evidence from Plaintiff's teachers, counselors, family members, and Plaintiff himself. For each of these categories of evidence, the decision explains the reasons for the weight the ALJ assigned to it.

Plaintiff contends that the ALJ "discarded" the third-party evidence without articulating a legally sufficient rationale. Plaintiff seems to contend that the ALJ's only rationale for "discarding" lay opinion evidence was that the evidence did not come from acceptable medical sources. This does not find basis in the record. The decision lays out evidence that supports and detracts from the ALJ's position, and appropriately explains the weight the ALJ gave to the various lay sources of opinion evidence. The ALJ does note which sources are not acceptable medical sources, but the ALJ also proceeds to evaluate non-medical source evidence under the appropriate standards. See, e.g., Tr. at 21. The ALJ cites multiple reasons for the weight afforded to each of the lay opinions. The decision articulates a legally consistent position based on substantial evidence.

## VI. Conclusion

The ALJ's determination that Plaintiff is not disabled is supported by substantial evidence. The ALJ's written decision is clear, well-reasoned, and compliant with the relevant laws and regulations.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed, and Plaintiff's complaint is **DISMISSED** with prejudice.

A separate judgment is issued herewith.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2019.